FILED
2017 Jun-07  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA


## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **HALL, DANIELLE,** | ) |
| **an individual,** | ) |
| | ) |
| | ) **Civil Action No.: _____** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| **CITY OF TALLADEGA, a** | ) |
| **Municipal Corporation;** | ) |
| **DANIEL CHESSER, an** | ) |
| **individual, JASON BUSBY, an** | ) |
| **individual, PATRICK BRYANT,** | ) |
| **an individual, BRIAN MUENGER,** | ) |
| **an individual** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

---

# C O M P L A I N T

---

### *Introduction*

COMES   NOW   Plaintiff,   Danielle Hall , who shows the court   the

following:

*Parties*

1.    Plaintiff incorporates each and every allegation above as if fully stated herein.

2.    Plaintiff, **Danielle Hall,** is a male citizen of the State of Alabama who was a competent adult at the time of the challenged actions ("Plaintiff' or "Mr. Hall").

3.    Defendant, **City of Talladega,** is a municipal corporation in Talladega, Alabama,  and which duly organized the Talladega City Police Department and the police department's policies and procedures governing the duties and actions of its police officers. ("the City" or "Talladega")

4.    Defendant, **Daniel Chesser,** is an individual who on July 6, 2015, was working in the line and scope of his duties as a K-9 police officer for the City of Talladega Police Department. He is sued in his individual capacity only.   ("Officer Chesser " or "Chesser")

5.    Defendant, **Chief Jason Busby** is an individual who on July 6, 2015, was working in the line and scope of his employment as the Chief of Police with the Talladega Police Department. Busby is sued in his individual capacity only. ("Chief Busby" or "Busby")

6.    Defendant, **Patrick Bryant**, is an individual who upon information

and belief, became the City Manager for the City of Talladega prior to July 6, 2015, and was working in the line and scope of his employment as the City Manager of Talladega, and who, as City Manager, exercised administrative supervision and control over the Talladega Police Department and its canine unit, and was authorized to remove and/or discipline Talladega police officers, including Chesser. Bryant is sued in his individual capacity only. ("Bryant")

7.     Defendant, **Brian Muenger**, is an individual who from July 2010 until March 2015 was working in the line and scope of his employment as the City Manager of Talladega, and who, as City Manager, exercised administrative supervision and control over the Talladega Police Department and its canine unit, and was authorized to remove and/or discipline Talladega police officers, including Chesser. Muenger is sued in his individual capacity only. ("Muenger")

8.   All of the n a m e d  Defendants, except the City of T a l l a d e g a, are sued individually for damages, and are sued individually and jointly for proximately causing one or more deprivations of rights and injuries to Plaintiff.

### *Jurisdiction*

9.   The court has original jurisdiction of Plaintiff's federal claims in this matter pursuant to *28 U.S.C. §§ 1331* and *1343(a)(3)*. Also, the court has supplemental jurisdiction over Mr. Hall's state law claims pursuant to *28U.S.C. §1367(a)*. Venue is proper pursuant to *28 U.S.C. 1391*.

***42 U.S.C. §§ 1983 and 1988, Constitution of the***
***U.S., Common Law of the State of Alabama***

10.     This is a civil action for money damages brought pursuant to:

    a)   42 U.S.C. §§ 1983 and 1988;

    b)   The Fourth and Fourteenth Amendments to the United States Constitution, and

    c)   Alabama law

***Color of State Law***

11. At the time of all relevant events, all defendants were acting under color of state law, that is, they were acting under the color of the statutes, regulations, policies and customs of the State of Alabama and/or the City of Talladega.

***Factual Summary of Events***

12.     On the evening of July 5, 2015, Hall and his girlfriend returned home to Talladega, Alabama from an out of town vacation. When they pulled into town, Hall's girlfriend drove him to a friend's house to pick up Hall's truck that he left there while they were away on vacation.

13.  When he arrived at his friend's house Hall went inside to visit.

14. Later that same night Hall left his friend's house and headed home in his

truck.

15. Hall pulled into his driveway and got out of the car and that is when he first noticed a police car with lights on behind him. Officer Chesser was the officer in the Talladega police car.

16. Chesser got out of the car and told Hall to stop as Hall was walking toward his front porch. Hall asked Chesser "*what did I do*?" as he continued walking toward his front porch.

17. Chesser threatened to release his police dog, Andor, if Hall did not stop at which point hall complied and  got down on his all fours.

18.   Andor was assigned to Defendant Chesser, a designated Talladega canine unit police officer.

19. Even though Hall complied with Chesser's orders Chesser released Andor.

20. Andor attacked Hall by biting down on his arm while Hall was on his all fours.

21.   Chesser finally ordered Andor to release but Andor did not follow commands until Chesser began to strike Andor.

22.     Hall did not resist, flee, or failing to comply with Chesser's orders when Chesser released Andor and sicced Andor on Hall.

23.     Chesser sicced Andor on Hall without any probable cause to do so.

24.     Plaintiff screamed and yelled for someone to get Andor off of him as it maintained its bite on his arm and as it continued to bite down on his arm for an extended time.

25.     Chesser waited an unnecessarily long time to command Andor to let go of Hall's arm, and even then, Andor did not follow Chesser's commands and it took additional time for Chesser to get Andor to let go of Hall's arm.

26.     Hall suffered serious bite wounds and injuries to his arm due to the attack.

27.     Hall was taken from the scene to Citizens Hospital by ambulance and received treatment for his dog bite wounds.

28.     Hall was charged with a minor misdemeanor charge for attempting to elude officer and driving while revoked.

29.     Chesser unreasonably commanded Andor to attack Hall even though Hall complied with Chesser's orders and was on all fours at his house when ordered to do so.

30. Chesser was in a position to reasonably arrest Hall without the use of force prior to releasing Andor.

31.   Chesser used unreasonable force in commanding Andor to attack Hall.

32.   The City of Talladega, through the Talladega Police Department, had a canine unit program in place for several years prior to the incident with Hall on July 6, 2015.

33.   The City of Talladega, through the Talladega Police Department, had in place written policies and procedures establishing the required canine unit training and monitoring for all canine unit officers and dogs; the limited circumstances where canine units were allowed to be deployed in apprehending suspects; the frequency of required evaluation, monitoring, training and re-training of canine unit officers and dogs necessary to operate the canine unit within constitutional parameters, etc.

34.   The Talladega Police Department's written policies and procedures required that the canine unit only be deployed in those circumstances where there was a felony suspect who represented a high risk of injury to the public, officers or others.

35.   The Talladega Police Department's written policies and procedures required that the canine unit only be deployed to apprehend fleeing felony suspects, hiding felony suspects, or concealed felony suspects.

### *Municipal Liability*

36**.**   During the time periods relevant to this case, Chief Busby, or alternatively, Muenger and Bryant, were the final decision makers for the law enforcement policies, practices, and customs for the City of Talladega. In particular, Busby or Muenger and Bryant had final decision making authority over the manner in which Talladega canine units were selected, trained and supervised; for the canine unit's practices in the apprehension of suspects; for the supervision and discipline of Talladega police officers; for the training and retraining to Chesser and any other officers and dogs involved in the police department's canine unit program; for supervising and assessing the reasonableness of force used by Talladega police officers, including the use of canine force; for investigating complaints of citizens and other police officers relating to use of force during arrests; and for the evaluation, training and selection of dogs for use in the City of Talladega's canine unit program.

37.   Busby, or Muenger and Bryant, approved, created, and/or ratified oral policies or customs that amounted to the failure to train

and supervise the constitutional use of canine force used by members of the Talladega Police Department.

38.   Prior to the incident forming the basis of this suit, Chief Busby, as the highest ranking supervisor within the Talladega Police Department, or in the alternative, Muenger and Bryant, as City Manager, had specific knowledge that Chesser's canine - named "Andor" - was unusually aggressive, failed to follow commands, failed to meet acceptable police canine training and evaluation criteria for use in the City's canine program, and represented a significant risk of causing unconstitutional harm and injuries to ordinary citizens.

39.   Prior to the incident forming the basis of this suit, Chief Busby, as the highest ranking supervisor within the Talladega Police Department, or in the alternative, Muenger and Bryant, as City Manager, encouraged, promoted and/or possessed specific knowledge that Chesser and his canine regularly attacked ordinary citizens during routine misdemeanor stops in violation of written City policy and existing case law relating to the constitutional limitations of search and seizure.

40.   Despite this knowledge, Busby, Muenger and Bryant failed

to train and supervise Chesser regarding his frequently reported unconstitutional use of canine force; violations of Talladega's oral and written policies and customs regarding the canine unit deployment on suspects; and violations of established search and seizure law.

41.  Prior to July 6, 2015, City policy and applicable police standards required that in order to train members of the Talladega canine unit, Chesser and Andor were required to complete an extensive training course relating to obedience and police work.

42.  Prior to July 6, 2015, the standard for police canine units was to train the dogs to "bite and hold" if commanded to do so by its handler, and to continue to bite and hold until countermanded by the handler.

43.  Injury to a suspect is inevitable when a canine employs the bite and hold function.

44.  A canine unit dog is trained to maintain the bite and hold until countermanded by the handler.

45.  Prior to July 6, 2015, police canine unit training standards required that the handler have complete control over the dog in order to avoid situations where a dog may bite suspects unnecessarily, and

to avoid situations where a police dog refused to let go of their bite when commanded to do so. The purpose of both of these training standards is to minimize incidents where police dogs bite suspects, and minimize injuries caused by dog bites.

46.   Prior to July 6, 2015, police canine unit standards adhered to the principle that the responsiveness of well-trained canine unit dogs will erode over time and continual evaluation, and that monitoring and training of police dogs was necessary to ensure that they will perform responsibly.

47.   Prior to July 6, 2015, police canine unit standards required that strict performance monitoring be conducted on canine units to ensure that dogs responded to commands and that handlers acted appropriately in controlling their dogs in the field.

48.   Prior to July 6, 2015, the Talladega Police Department did not have in place specialized internal procedures to monitor the performance of its canine unit, or to provide re-training to canine units.

49.   Prior to July 6, 2015, Chesser and Andor were the subject of numerous incidents where Chesser unnecessarily deployed Andor to apprehend misdemeanor suspects in violation of City of

Talladega's policies, and in violation of well-known constitutional principles under the Fourth Amendment to the United States Constitution.

50.   Prior to July 6, 2015, Bryant and Chief Busby, one or both of whom were the final decisions makers regarding the City of Talladega Police Department polices and customs, were made aware that Chesser and Andor were in need of re-training, supervision and disciplinary action due to numerous citizen complaints and complaints from other Talladega police officers regarding this canine unit's unnecessary use of force against ordinary citizens.

51.   For example, on August 5, 2014, approximately eleven months before the incident made the subject of this complaint, another Talladega police officer and former canine unit officer, Sgt. Marco Williams, notified his superior officers Captains Leon Thomas and John McCoy, that due to inappropriate deployment of Andor in recent misdemeanor calls, Chesser required remedial training on the Talladega canine unit policy.

52.   Sgt. Williams specifically recommended to Captain King that Chesser be suspended from any further canine apprehension deployments until he could demonstrate under similar conditions that

he and his dog could reliably act within the appropriate standards for canine unit training.

53. Sgt. Williams specifically recommended to Captain King that Chesser be suspended from any further canine apprehension deployments until he could demonstrate that he understood the Talladega Police Department rules and regulations concerning use of force and concerning deployment of the canine unit, as well as and the relevant case law of search and seizure.

54. Sgt. Williams specifically reported to Captain King that during Williams' investigation into prior incidents involving Chesser's deployment of Andor against misdemeanant suspects, he discovered that Chesser hid from his superiors at the Talladega Police Department those problem areas with his canine unit, which included his dog's lack of responsiveness to Chesser's commands.

55. Sgt. Williams also documented to his and Chesser's superiors that Chesser failed to document Andor's aggressive behavior in his use of force reports, and that Chesser omitted facts concerning Andor's aggressive behavior when asked during post-incident investigations.

56. Sgt. Williams reported to Captain Thomas on August 5,

2014, that during his questioning of Chesser about a prior incident where Chesser deployed Andor during a misdemeanor call in violation of the written rules and regulations at the Talladega Police Department, that Chesser gave "incorrect and vague reports" that Chief Busby had cleared Chesser to use the canine Andor for apprehension of misdemeanor violators.

57. In the months after Sgt. Williams reported Chesser's misdeeds and misconduct as a canine officer to his superiors at the Talladega police department, no administrative action was taken regarding Chesser and, consequently, several ordinary citizens suffered serious injuries due to being unconstitutionally attacked by Andor on Chesser's commands.

58. On November 14, 2014, Crystal Houston was assaulted by Andor as she got of her car in her driveway.[1] Houston was pursued and stopped at her house by another Talladega police officer on misdemeanor driving charges, and even though she posed no threat to the officer and was on the ground complying with the officer's orders, Chesser arrived on the scene and gratuitously sicced Andor on her.  Also, Andor failed to follow Chesser's commands to release

---

[1] See *Crystal Houston vs. Daniel Chesser, et al.,* United States District Court for the Northern District of Alabama, Case No. 2:16-cv-1838

when commanded to do so which caused further pain and injury to Houston.

59.   On June 12, 2015, Ashley White was assaulted by Andor during a misdemeanor traffic stop after she initially got and fled but then fell and wholly surrendered to Chesser while she was still on the ground.[2] Andor bit down on White's buttocks and shook his head around for an extended time even after Chesser commanded Andor to stop biting down.  White suffered serious injuries as a result of her bites which required extensive reconstructive surgery and which caused permanent deformation in her private areas.

60. On July 3, 2015, Percy Garrett was assaulted by Andor during a misdemeanor traffic stop after Chesser asked permission to search Garrett's pockets.  Chesser sicced Andor on Garrett while Garrett was on the ground in compliance with Chesser's orders.[3] Andor bit Garrett's hamstring and caused significant pain and injury requiring medical treatment and care.

61.   Each of Sgt. Williams' noted concerns relating to Chesser and the Talladega canine unit, as described in the above paragraphs

---

[2] See *Ashley White vs. Daniel Chesser, et al.,* United States District Court for the Northern District of Alabama, Case No. 2:17-cv-369
[3] See *Percy Garrett vs. Daniel Chesser, et al.,* United States District Court for the Northern District of Alabama, Case No. 2:17-cv-370

51 through 60, were brought to the attention of Busby, Muenger and/or Bryant prior to July 6, 2015.

62.  Chief Busby, Muenger and/or Bryant had actual knowledge of Sgt. Williams' described concerns relating to Chesser and his canine unit dog and the need for Busby and Bryant to require Chesser, Andor and the entire Talladega police canine program to undergo comprehensive supervision, re-training and disciplinary action between August 2014 and the date of Plaintiff's injuries on July 6, 2015.

63.  Prior to July 6, 2015, Chief Busby, Meunger and/or Bryant were specifically aware that Chesser and his canine unit frequently committed excessive force to apprehend individuals suspected of only misdemeanor violations, including knowledge of Houton, White and Garrett's assaults as described above.

64.  Prior to July 6, 2015, Chief Busby, Muenger and/or Bryant were  specifically aware that Chesser and Andor were likely to commit unconstitutional deprivations of ordinary citizens' rights --- namely to be free from unnecessary and excessive force --- unless Chesser was adequately supervised, trained and disciplined regarding his established tendency to use unconstitutional canine force in

apprehending suspects.

65.   Chief Busby Muenger and/or Bryant also were aware that
Andor was not responding to Chesser's commands when deployed,
and that Chesser was exercising bad judgment in the use of canine
force and required corrective training.

66.   Chief Busby, Muenger and/or Bryant were aware that
unless Chesser and Andor received additional training in the
constitutional use of canine force as recommended by Sgt. Williams,
that ordinary citizens like Plaintiff would likely suffer violations of
their constitutional rights due to unnecessary use of canine force.

67.   Chief Busby, Muenger and/or Bryant ignored Sgt.
Williams' recommendations that Chesser be re-trained,   Sgt.
Williams' recommendation that Chesser be disciplined for his
violation of Talladega's rules and regulations regarding the
deployment of canine units, and reports that Chesser unreasonably
caused his canine unit to assault ordinary citizens including Houston,
White and Garrett.

68.   Prior to July 6, 2015, Chief Busby, Muenger and/or Bryant
failed to take any action whatsoever in the face of the overwhelming
degree of notice they received from Sgt. Williams and the reports of

canine assaults on ordinary citizens including Houston, White and Garrett.

69.   Chief Busby, Muenger and/or Bryant's failure and inaction to train, supervise and discipline Chesser for routinely deploying his canine in an unconstitutional manner constituted a policy or custom of failure to train canine unit officers at Talladega Police Department.

70.   Chief Busby, Muenger and/or Bryant's failure to re-train and/or discipline Chesser for the deployment his canine in violation of known police canine force standards and Talladega written rules and regulations constituted a policy or custom of failure to train canine unit officers at Talladega Police Department.

71.   Chief Busby, Muenger and/or Bryant's failure to re-train Andor when it they knew that Andor was not responsive to Chesser's commands constituted a policy or custom of failure to train canine unit animals at Talladega Police Department.

72. Chief Busby, Muenger and/or Bryant approved, created and/or ratified polices or customs that amounted to a failure to train and supervise the constitutional use of canine force by members of the Talladega police department.

73. Defendants Busby and Bryant had specific knowledge that Chesser and his canine unit were acting outside of police and applicable law regarding search and seizure use of force. Despite this knowledge, Busby, Muenger and/or Bryant failed to train and supervise Chesser regarding his frequently reported unconstitutional use of canine force, violations of the City's policies and procedures regarding use of canine force, and violations of search and seizure law under the Fourth Amendment to the United States Constitution.

74. The policies or customs regarding the failure to train Chesser as described in the preceding paragraphs constituted deliberate indifference because they inflicted more frequent and serious injuries to misdemeanor suspects than would otherwise occur.

75. The policies or customs of failure to train Chesser as described in the preceding paragraphs constituted deliberate indifference because they created a substantially higher likelihood that misdemeanor suspects like Plaintiff would suffer constitutional deprivations and physical injuries due to unnecessary canine force.

76. The policies or customs of failure to require more training to Andor as described in the preceding paragraphs constituted deliberate indifference because they placed misdemeanor suspects

like Plaintiff at risk of known and expected injuries than would otherwise not occur during normal citations and arrests of misdemeanants.

77.    These deliberately-indifferent customs and policies of failure to train were known to Chesser and were authorized and implemented by Chief Busby and/or Bryant and their subordinates.

78.    Plaintiff was compliant and obeyed Chesser's orders when he stopped got on all fours on his porch.

79.    Despite Plaintiff's compliance, his efforts to follow orders, and his status as a mere misdemeanor suspect who posed no threat of harm to any officer or member of the public, Plaintiff was attacked by Andor at Chesser's command without any reasonable justification.

80.    Despite Plaintiff's compliance, his efforts to follow orders, and his status as a mere misdemeanor suspect who posed no threat of harm to any officer or member of the public, Plaintiff was bitten by Andor and continued to be bitten by Andor long after Chesser commanded Andor to release Plaintiff.

81.    Defendants Chesser's unconstitutional uses of force toward Plaintiff were motivated by malice and/or involved a reckless and callous indifference to Plaintiff's constitutional right to be free from the unreasonable use of force during

a misdemeanor arrest.

82.   The force used by Defendant Chesser was objectively unreasonable and unnecessary for Defendant C h e s s e r to defend e i t h e r himself o r any other person from bodily harm during the arrest of Plaintiff, and occurred while Plaintiff was neither resisting nor fleeing.

83.   The force used by Defendants C h e s s e r was objectively unreasonable and constituted the excessive use of force, in violation of Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

84.     As a direct and proximate result of the conduct of Defendants C h e s s e r, individually, Plaintiff suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, expense of hospitalization, and medical care and treatment. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

85.   Defendant Busby, or in the alternative, Bryant, are individually liable to Plaintiff for violating Plaintiff's right from being free from excessive force as described above.

86.   Defendant Chesser is a subordinate of defendant Busby and/or M u e n g e r and/or Bryant, and Chesser violated Plaintiff's Fourth Amendment Rights to be free from the unreasonable use of force, including K9 force.

87.    At the time that Chesser and his canine Unit were deployed and caused injury to Plaintiff on July 6, 2015, there was history of widespread abuse that was obvious, flagrant, rampant and of continued duration involving the deployment of the canine unit on misdemeanor suspects who were not fleeing and/or who were not threatening harm to any officer or other person.

88.    Defendant Busby, or alternatively, Muenger and/or Bryant, were on notice of this widespread abuse and of the need to take corrective action and Defendant Busy or in the alternative Muenger and/or Bryant, failed to do so.

89.    The City of Talladega, through its final policy makers, Defendant Busby, or in the alternative, Muenger and/or Bryant, implemented an official policy or custom to allow the use of the Talladega canine unit to apprehend misdemeanor suspects even when those suspects were following orders, not resisting, and were not threatening harm to any officer or any other person. This policy or custom resulted in Chesser acting with deliberate indifference and reckless disregard to Plaintiff's Fourth Amendment Right to be free from the unreasonable use of force.

90.    Defendant Busby, or in the alternative, Muenger and/or Bryant, implemented an official or unofficial policy or custom for the failure to train and/or supervise Chesser and the canine unit dog as described herein.

91.    As a result of the City of Talladega's implementation and/or

ratification of official and unofficial policies and customs described herein, Chesser acted with deliberate indifference and reckless disregard to Plaintiff's Fourth Amendment Right to be free from the unreasonable use of force.

92.    The City of Talladega and Defendant Busby knew or should have known that Chesser would have taken this action against Plaintiff and failed to stop Chesser from doing so, failed to train or retrain Chesser from doing so, and failed to supervise and discipline Chesser to prevent him from doing so.

## COUNT I
### *Excessive Use Of Force Claim Under  42 U.S.C. § 1983*

93.    Plaintiff re-alleges the Statement of Facts of excessive force in paragraphs 12 through 92 above as if fully set out herein, and furthermore re-allege the facts in paragraphs 36 through 77 relating to the City, Chief Busby , Meunger and Bryant's municipal and supervisory liability as if fully set out herein.

94.    The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.

95.    Defendants' use of force against Plaintiff as described in this Complaint at paragraphs 81 through 86 constituted a "seizure" under the Fourth Amendment.

96.    All Defendants' use of force against Plaintiff was intentional and objectively unreasonable under the circumstances, in violation of the Fourth

Amendment.

97.    The   individual   Defendants'   violations   of   Plaintiff's   Fourth Amendment rights were committed with malice or reckless indifference to those rights.

98.    The   City,   Chief   Busby,   Muenger   and/or   Bryant   violated   of Plaintiff's Fourth Amendment rights by their actions and inactions when they created and or ratified those policies and customs as described in paragraphs 36 through 77 above.  These policies and customs permitted the Talladega canine unit to   use   unconstitutional   canine   force   to   apprehend   misdemeanants,   including Plaintiff.  Those policies and customs described in paragraphs 36 through 77 to fail to train and supervise the City's canine units, including Chesser,  and to ratify Chesser's actions, created a causal connection between Busby or Barton's actions and   inaction   as   the   final   decision   makers   for   the   City   and   the   constitutional deprivations suffered by Plaintiff in this matter.

99.  As a result of the conduct of the Defendants' actions and inactions to cause Plaintiff to suffer deprivation of her federally protected rights descried above, Plaintiff suffered physical and emotional injuries which required medical treatment, caused him to incur medical bills and left him with permanent scars and disfigurement.

**Count II**

*State Law – City of Talladega's Liability under Ala. Code 11-47-190*

100.   Plaintiff re-alleges and re-affirms all the averments in the Statement of Facts of this Complaint as if fully set forth herein.

101.   At all times described above, each of the Defendants except the City of Talladega were acting as agents, officers and/or employees of the City of Talladega and were engaged in work therefore and were acting in the line of their duties.

102.   As agents, officers and employees of  the City of Talladega, each of the named individual Defendants had a duty to use due care and skill in conducting traffic stops, detaining ordinary citizens and suspects, observing the rights of suspects and citizens, and utilizing canine units to apprehend suspects.

103.   Each of the individual Defendants as agents, officers and employees of the City of Talladega breached those duties and acted with neglect, carelessness and/or unskillfulness in apprehending Plaintiff.

104.   The neglect, carelessness and/or unskillfulness described in the preceding paragraphs proximately caused Plaintiff to be injured and damaged as described above, which includes but is not limited to the following:

    a) bite wounds to his arm;

b) medical bills and charges;

c) mental anguish and suffering

d) pain and suffering

e) permanent injuries.

# COUNT III

## *State Law - The Individual Defendants Liability for Negligence and Wantonness*

105.   Plaintiff re-alleges and re-affirms all the averments in the Statement of Facts of this Complaint as if fully set forth herein.

106.   Each of the named individual Defendants acting in their individual and personal capacity, had a duty to use reasonable care, follow all laws of the state, and act within the laws of United States Constitution and the Constitution of the State of Alabama and follow all constitutional policies of the Talladega Police Department when conducting traffic stops, detaining ordinary citizens and suspects, observing the rights of suspects and citizens, and utilizing canine units to apprehend suspects.

107.   Each of the individual Defendants as agents, officers and employees of the City of Talladega breached those duties and acted with neglect, carelessness and/or unskillfulness in apprehending Plaintiff.

108.   The negligent and wanton conduct of each of the Defendants described above caused unreasonably canine force to be perpetrated upon Plaintiff in violation of his state and federally protected rights as an ordinary citizen, particularly to be free from the unreasonable use of force.

109.   The wrongful conduct of the individual Defendants described above, proximately caused Plaintiff to be injured and damaged as described above which includes but is not limited to the following:

  a) bite wounds to his arm;

  b) medical bills and charges;

  c) mental anguish and suffering

  d) pain and suffering

  e) permanent injuries.

### *Nature of the Relief Sought*

110.   Plaintiff requests and seeks judgment against one or more Defendants individually or jointly for the following:

  a.    all compensatory and punitive damages as allowed by state and federal law;

  b.    any special damages as allowed by state and federal law, as more  particularly as shown as trial;

c.    damages for injuries caused by the deprivation of the constitutional rights under the United States Constitution;

d.    damages as allowed under Alabama law as the facts are shown;

e.    punitive damages against each individual Defendant under federal law (not including the City);

f.    reasonable attorney fees, costs and expenses of litigation under 42 U.S.C. § 1988;

g.    any injunctive and declaratory relief to which Plaintiff may be entitled;

h.    any other and further relief so ordered.

Dated on this the 7th June, 2017

Respectfully submitted,

*/s/Alan B. Lasseter*
ALAN B. LASSETER

LASSETER LAW FIRM, P.C.
2100 Morris Avenue
Birmingham, AL 35203
Telephone:  (205)322-1411
Email: alan@lasseterlaw.com

JURY DEMAND

**Plaintiff hereby demands a struck jury for the trial in this cause.**


CERTIFICATE OF SERVICE

I, Alan Lasseter, certify that on June 7, 2017, I electronically served

this document, via certified mail via the Clerk of the Court, upon:

City of Talladega
C/o City Clerk
203 South Street West
Talladega, Alabama 35160

Officer Daniel Chesser
1 Bradley Creek Rd.
McAllister, MT 59740

Chief Jason Busby
Talladega Police Department
203 South Street West
Talladega, Alabama 35160

City Manager Brian Muenger
C/o City Clerk
203 South Street West
Talladega, Alabama 35160

City Manager Patrick Bryant
C/o City Clerk
203 South Street West
Talladega, Alabama 35160

*/s/ Alan Lasseter*

Alan B. Lasseter